

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

June 28, 1960

Dr. J. W. Edgar
Commissioner of Education
Capitol Station
Austin 11, Texas

Opinion No. WW-868

Re: Legal Status of Texas
Public Junior Colleges
as regards their eligi-
bility for financial
assistance under Title
III of the National De-
fense Education Act of
1958.

Dear Dr. Edgar:

We have received your letter of recent date in which you ask the opinion of this Department as to the legal status of Texas Public Junior Colleges as regards their eligibility for financial assistance under Title III of the National Defense Education Act of 1958.

Your letter requesting this opinion contains the following information:

> The National Defense Act of 1958 authorizes financial assistance to the States over a period of four fiscal years in establishing and maintaining a two-part program for strengthening science, mathematics and modern foreign language instruction in public schools. (Sections 441-445, Title 20, USCA)

> Section 441, Title 20, USCA, author- izes an appropriation of $70 million for the fiscal year ending June 30, 1959, and for each of the three succeeding fiscal years for payments to state educational agencies under this Title for the acquisi- tion of equipment suitable for use in pro- viding education in science, mathematics and modern foreign languages in the elemen- tary and secondary schools of the State and for minor remodeling of laboratory or other space used for such equipment. This section

further authorizes $5 million for like
fiscal years for payments to state
educational agencies for the expansion
and improvement of state supervision
and related services in the fields of
science, mathematics and modern foreign
language instruction in the elementary
and secondary schools and for the
administration of the state plan.

"Under other provisions of Public
Law 85-864, and a Texas State Plan
adopted pursuant thereto many of the
elementary and 12-grade school districts
of this State are currently participating
in Title III program, which is administer-
ed through the Texas Central Education
Agency.

"Recently, interested Public Junior
College Districts of Texas have observed
that such districts may likewise realize
Title III program benefits needed if this
Agency would obtain a ruling from the
Office of Attorney General that Texas
Public Junior Colleges constitute a part
of the State public secondary school system
for purposes of that law."

Section 403 (h), Title 20, USCA, known as the
National Defense Education Act of 1958, contains the
following definitions of the terms or clauses used in
the law:

"The term 'secondary school' means
a school which provides secondary educa-
tion, as determined under State law, ex-
cept that it does not include any educa-
tion provided beyond grade 12. For pur-
poses of Sections 441 through 444 of the
title, the term 'secondary school' may
include a public junior college, as
determined under State law."

Regulations adopted as applicable to the admin-
istration of Title III, Sections 301-304, issued by the
U. S. Commissioner of Education define in Subpart A.1 as
follows:

"(p) 'Secondary school' means a
school which provides secondary educa-
tion, as determined under State law, at
grade 12 or below, and may include a
public junior college providing educa-
tion beyond the 12th grade if determined
under State law to be a part of the State
public secondary school system."

Webster's International Dictionary, second
edition, defines "secondary," from an educational stand-
point, as being "intermediate between elementary and
collegiate." Webster's International Dictionary defines
"Junior College" as "a college providing courses of
Freshman and often of Sophomore grade, either as an
independent unit, or as a part of a standard college, or
as a secondary school."

Section 12, Article 2815h, Vernon's Civil Stat-
utes, states that a junior college consists of the Fresh-
man and Sophomore College work taught either separately or
in conjunction with the Junior and Senior years of the High
School and the course of study must be submitted and approv-
ed by the Central Education Agency before it may be offered.

The Texas statutes have not specifically defined
the meaning of the term Junior College nor has its legal
status been determined, but neither has the meaning of the
term been limited in any way. (Nixon-Clay Commercial Col-
lege v. Wood, 170 S.W. 2d 1019, 1944). Therefore, in
answering the question before us, it becomes necessary
to look to the characteristics of Public Junior Colleges in
Texas and the similarities between public junior colleges
in relation to public secondary schools in Texas, such as
public high schools, to determine the legal status of public
junior colleges under State law.

Sections 1, 2 and 3, of Article 2654-1, Vernon's
Civil Statutes, read in part as follows:

"Section 1. There is hereby estab-
lished a Central Education Agency compos-
ed of the State Board of Education, the
State Board for Vocational Education, the
State Commissioner of Education, and the
State Department of Education. It shall
carry out such educational functions as
may be assigned to it by the Legislature,

but all educational functions not specifically delegated to the Central Education Agency shall be performed by County Boards of Education or District Boards of Trustees.

"Sec. 2. The Central Education Agency shall exercise, under the Acts of the Legislature, general control of the system of public education at the State level. Any activity with persons under twenty-one (21) years of age which is carried on within the State by other State or Federal Agencies, except higher education in approved colleges, shall in its educational aspects be subject to the rules and regulations of the Central Education Agency.

"Sec. 3. The Central Education Agency shall be the sole agency of the State of Texas empowered to enter into agreements respecting educational undertakings, including the providing of school lunches and the construction of school buildings, with an agency of the Federal Government, except such agreements as may be entered into by the Governing Board of a State university or college. No County Board of Education or Board of Trustees of a school district shall enter into contracts with, or accept moneys from, an agency of the Federal Government except under rules and regulations prescribed by the Central Education Agency."

Sections 1, 2 and 3, of Article 2654-3, Vernon's Civil Statutes, read in part as follows:

"Section 1. The State Board of Education is hereby declared to be the policy forming and planning body for the Public School System of the State. . . .

"Sec. 2. It shall have the duties and powers prescribed in the statute for the State Board of Education and the State Board of Vocational Education. As one part of the Central Education Agency, it shall have the specific responsibility for adopting policies, enacting regulations and establishing general

rules for carrying out the duties placed
upon it or upon the Central Education
Agency by the Legislature. . . .

"Sec. 3. The State Board of Education
shall review periodically the educational
needs of the State and adopt or promote plans
for meeting these needs. It shall evaluate
the outcomes being achieved in the educational
program. . . ."

Sections 1 and 3 of Article 2654-6, Vernon's
Civil Statutes, read in part as follows:

"Section 1. There is hereby establish-
ed the State Department of Education, which
shall be the professional, technical, and
clerical staff of the Central Education Agen-
cy. It shall be organized into such divisions
and subdivisions as shall be established by
the State Board of Education upon recommenda-
tion of the State Commissioner of Education."

"Sec. 3. The functions of the State De-
partment of Education shall be to carry out
the mandates, prohibitions, and regulations
for which it is made responsible by statute,
the State Board of Education, and the Commis-
sioner of Education. It shall have no power
over local school districts except those
specifically granted in statute, but it shall
seek to assist local school districts in
developing effective and improved programs
of education through research and experimenta-
tion, consultation, conferences, and evalua-
tion. In discharging these functions the State
Department of Education shall make free and
full use of advisory committees and commissions
composed of professional educators and/or other
citizens of the State."

Sections 1, 3, 4 and 7, of Article 2815h, Vernon's
Civil Statutes, read in part as follows:

"Section 1. Any Independent School Dis-
trict, or city, which has assumed control of
its schools, having in either case an assess-
ed property valuation of not less than Twelve

Million ($12,000,000.00) Dollars . . .
that will meet the needs of the propos-
ed Junior College District, said need
to be determined by the State Board of
Education . . . may by vote of the quali-
fied voters of the district or city
establish and maintain a junior college
. . ."

"Sec. 3.   It shall be the duty of
the State Board of Education, with the
advice of the State Superintendent of
Public Instruction[1] to determine whether
or not the conditions set forth in Sec-
tion No. 1 have been complied with, and
also whether, in consideration of the
geographic location with respect to
colleges already established, it is feas-
ible and desirable to establish such
Junior College District.   In passing upon
this question, it shall be the duty of
the State Board of Education to consider
the needs of the State and the welfare of
the State as a whole, as well as the wel-
fare of the community involved.   The
action of the State Board of Education
shall be final and shall be communicated,
through the State Superintendent of Public
Instruction, to the Board together with an
order of the State Board of Education,
authorizing further procedure in the estab-
lishment of the Junior College District, if
said State Board indorses its establishment.
. . ."

"Sec. 4.   A junior college established
and maintained by an independent school dis-
trict or city that has assumed control of
its schools, or where the same has been or-
ganized as a junior college district under
the provisions of this Act prior to October
15, 1935, as an independent entity, or may
hereafter be so created, and/or wherein the

---

[1]Office abolished and powers and duties transferred to
State Commissioner of Education.   See Arts. 2654-5,
2654-7, Vernon's Civil Statutes.

boundaries of the junior college district are the same, or substantially the same, as the independent school district, shall be governed, administered, and controlled by and under the direction of the board of education of such district or city. The said board of education of such junior college district, under the provisions of this Act, shall in addition to all of the powers and duties vested in them by the terms of this Act, be furthermore vested with all the rights, powers, privileges, and duties conferred and imposed upon trustees of independent school districts by the General Laws of this State, so far as the same may be applicable thereto and not inconsistent with this Act. . . ."

"Sec. 7. The Junior College District created under this Act shall have the power to issue bonds for the construction and equipment of school buildings and the acquisition of sites therefor, and to provide for the interest and sinking fund for such bonds by levying of such taxes as will be necessary in this connection. The Junior College District shall also levy and collect taxes for the support and maintenance of the Junior College, provided that no bonds shall be issued and no taxes shall be collected until by vote of the majority of the qualified voters of the Junior College District, at an election called for that purpose in accordance with the provisions of the General Law providing for similar elections in Independent School Districts, such bonds and taxes are authorized. . . ."

Sections 1, 2 and 3 (a) (b) (c) and (d), Article 2815k-2, Vernon's Civil Statutes, read in part as follows:

"Section 1. The Central Education Agency shall exercise, under the Acts of the Legislature, general control of the Public Junior Colleges of this State. All authority not vested by this Act or other laws of the State in the Central Education

Agency or its component parts, is reserved and retained locally in each respective Public Junior College District or governing board of each Public Junior College as provided in the laws applicable thereto.

"Sec. 2. The State Board of Education shall have the responsibility for adopting policies, enacting regulations and establishing general rules necessary for carrying out the duties with respect to Public Junior Colleges placed upon it or upon the Central Education Agency by the Legislature. The State Commissioner of Education shall be responsible for carrying out such policies and enforcing such rules and regulations.

"Sec. 3. The State Board of Education, with the advice and assistance of the State Commissioner of Education, shall have authority to:

"(a) Authorize the creation of Public Junior College Districts as provided in the laws pertaining thereto. In the exercise of this authority the State Board of Education shall give particular attention to the need for a Public Junior College in the proposed district, and the ability of the district to provide adequate local financial support;

"(b) Dissolve any Public Junior College District which has failed to establish and maintain a Junior College therein within three (3) years from the date of its authorization;

"(c) Maintain a Public Junior College Division within the State Department of Education. The State Commissioner of Education shall have the authority to appoint, subject to the confirmation of the State Board of Education, an Assistant Commissioner of Education for Public Junior Colleges, and to prescribe his duties and functions;

"(d)  Adopt standards for the
operation of Public Junior Colleges
and prescribe the rules and regula-
tions therefor; . . ."

As set out in Article 2815h, Vernon's Civil
Statutes, the Texas Public Junior Colleges are govern-
ed, administered and controlled by the Board of Educa-
tion of the Independent School Districts or Junior
College Districts of the particular district in which
each is located and all such districts are under the
general control of the Central Education Agency as stated
in Article 2654-1, Vernon's Civil Statutes.  Under Article
2815h, Vernon's Civil Statutes, the Junior College Dis-
tricts are given power to issue bonds, levy taxes to
service same, and levy and collect taxes for their support
and maintenance.  Therefore, Junior Colleges of Texas are
an integral part of the local public school system, and,
as such, are a part of the secondary public school program
which includes high schools and junior colleges.  Although
from a curriculum standpoint, the Texas Public Junior
Colleges are considered higher education, since they offer
work parallel to that of the first two years of the four
year colleges, they also come within the definition of
secondary schools in Texas, being governed and financed in
the same manner on the State and local levels as are other
secondary schools in Texas and we conclude that this is con-
trolling in determining their legal status as secondary
schools.

Therefore, it is the opinion of this Department
that the Texas Public Junior Colleges are an integral part
of the local public school system, and, as such, under
State law, are a part of the public secondary school system
of Texas which entitles them to financial assistance under
Title III of the National Defense Education Act of 1958.

## SUMMARY

The Public Junior Colleges of
Texas, an integral part of
local public school systems,
are considered a part of the
secondary school program of
Texas under State law even
though the curriculum is paral-
lel to that of the first two

years of a four year college,
and therefore, the Public
Junior Colleges of Texas are
eligible for financial assist-
ance under Title III of the
National Defense Education Act
of 1958.

Yours very truly,

WILL WILSON
Attorney General

Iola B. Wilcox
Assistant Attorney General

IBW:mm

APPROVED:

OPINION COMMITTEE
W. V. Geppert, Chairman

Mary K. Wall
Robert G. Scofield
Gordon Cass
Arthur Sandlin

REVIEWED FOR THE ATTORNEY GENERAL
BY:  Leonard Passmore